IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| INGRID MORRISON, Individually and as Surviving Spouse of J.D. MORRISON, deceased, | ) ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-11-1204-D |
| STONEBRIDGE LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court is Defendant's Amended Second Motion for Summary Judgment [Doc. No. 108], filed pursuant to Fed. R. Civ. P. 56. Plaintiff has timely opposed the Motion, which is fully briefed and at issue.[1]

This diversity case concerns an accidental death and dismemberment insurance policy issued by J.C. Penney Life Insurance Company, which later changed its name to Stonebridge Life Insurance Company. Plaintiff and her now-deceased husband purchased coverage under the policy in 1990, and maintained coverage until Mr. Morrison's death. Plaintiff submitted an insurance claim as her husband's beneficiary. After investigating the claim and obtaining a medical consultant's opinion, Defendant denied coverage for the reason that there was no evidence Mr. Morrison's death resulted from an accidental injury independent of all other

---

[1] In addition to Defendant's opening brief and Plaintiff's response brief [Doc. No. 116], the following briefs have been considered: Defendant's reply brief [Doc. No. 122]; Plaintiff's surreply brief [Doc. No. 130]; and Defendant's response to Plaintiff's surreply [Doc. No. 131].

causes, as required by the policy. By the First Amended Complaint, filed after the case was removed to federal court, Plaintiff seeks damages for breach of contract, insurer's bad faith, unjust enrichment, and unfair and deceptive conduct in violation of the Oklahoma Insurance Code, specifically, Okla. Stat. tit. 36, §§ 1203, 1204.

Defendant now seeks summary judgment on all claims, arguing the following grounds: 1) Plaintiff lacks evidence to establish an essential element of her breach of contract claim, namely, that an accident was the sole proximate cause of her husband's death; 2) Plaintiff cannot prove bad faith because her insurance claim was properly denied and because Defendant made a reasonable decision based on the medical evidence obtained during its investigation; 3) Plaintiff cannot prevail on her claim of unjust enrichment because she cannot establish bad faith and because equitable relief is unavailable when a legal remedy exists; 4) Plaintiff's claim that Defendant committed unfair and deceptive acts and practices in violation of the Oklahoma Insurance Code lacks merit; and 5) Plaintiff cannot prove her contractual or tort claim because she did not timely designate a medical expert or submit a medical expert's report, and thus she lacks any competent evidence to prove causation of Mr. Morrison's death. Defendant also asserts in its reply brief, to which Plaintiff was permitted a response, that Oklahoma does not authorize a private right of action by an insured for alleged violations of the insurance statutes.

**Standard of Decision**

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts [2]

Mr. Morrison and Plaintiff purchased accident insurance in 1990 from J.C. Penney Life Insurance Company under a group policy issued to J.C. Penney Company, Inc. to provide accidental death and dismemberment insurance to credit cardholders. The Morrisons received a certificate of insurance effective April 25, 1990, stating the terms of coverage; they received a second certificate bearing the same effective date after the insurer changed its name to Stonebridge Life Insurance Company in 2002.[3] As pertinent here, Defendant promised to pay the applicable benefit for a loss of life if an insured was injured in an accident not otherwise excluded by the policy. The term "injured" was defined to mean "having suffered an injury," and the term "injury" was defined as follows:

> INJURY means bodily injury caused by an accident occurring while the insurance is in force resulting:
> 1. within 365 days after the date of the accident; and
> 2. directly and independently of all other causes,
> in any Loss covered by the policy.

---

[2] Plaintiff did not oppose Defendant's Motion in the manner required by Rule 56 or LCvR56.1(c). Instead of addressing the facts stated in the Motion, Plaintiff presents her own statement of facts. The Court could consider Defendant's stated facts to be undisputed due to Plaintiff's failure to address them. *See* Fed. R. Civ. P. 56(e); LCvR56.1(c). In the interest of justice, the Court instead has compared the two statements and gleaned from them the material facts that are not in dispute. Plaintiff's counsel is cautioned, however, that a failure to comply with federal and local rules in the future may result in an order striking the response brief or an order granting summary judgment, if appropriate, based on the facts shown by the movant.

[3] The certificates were issued to Mr. Morrison but provided family coverage. The second certificate of insurance was identical to the first except for the name change and an endorsement modifying the exclusion for injury while intoxicated. *Compare* Def.'s Mot. Summ. J., Ex. 3 [Doc. No. 108-3] *with* Pl.'s Resp. Br., Ex. 1 [Doc. No. 116-1], pp.3-8 (ECF numbering).

*See* Def.'s Mot. Summ. J., Ex. 2 [Doc. No. 108-2], p.2; Ex. 3 [Doc. No. 108-3], p.3; *see also* Pl.'s Resp. Br., Ex. 1 [Doc. No. 116-1], p.5 (ECF numbering); Ex. 2 [Doc. No. 116-2], p.2. The insurance coverage remained in effect through the time of Mr. Morrison's death in 2009.

On November 21, 2009, Mr. Morrison fell in the bathroom of his home as he was stepping out of a shower stall with a sliding glass door. When he fell, Mr. Morrison struck his head against the track of the shower door. Although Mrs. Morrison witnessed the fall, she could not tell what caused it; she assumed he slipped or tripped on the bath mat. Mr. Morrison was unconscious when Mrs. Morrison reached him. Because he was unresponsive, Mrs. Morrison checked for a pulse and, finding none, started CPR.[4] A son who was working outside heard her calls for help and telephoned for emergency assistance; he then continued CPR until medical responders arrived.

Emergency medical service (EMS) employees started treatment for cardiac arrest. EMS records state that Mr. Morrison's "presentation [was] consistent with full cardiac arrest." *See* Def.'s Mot. Summ. J., Ex. 4 [Doc. No. 108-4], p.2 (ECF numbering). The EMS records reflect "there was a small amount of blood present in the area presumably from a small head wound from his fall." *Id*. After approximately 20 minutes, Mr. Morrison was placed on a stretcher and transported to a hospital. Shortly before arrival at the hospital, resuscitation efforts were successful, and a pulse was restored. *Id*.

---

[4] Although retired, Mrs. Morrison is trained as a respiratory therapist and had 10 years of work experience in the medical field.

After receiving emergency room care, Mr. Morrison was admitted to the hospital by his personal physician of 13 years, Dr. Mahmood A. Shakir, M.D. The admitting diagnoses were closed head injury, status post cardiac arrest, hypoxic encephalopathy, and peripheral vascular disease. A neurologic consultation resulted in an impression of hypoxic ischemic encephalopathy, or brain injury due to lack of oxygen. According to the consultation report, a CT scan of Mr. Morrison's head showed no acute change or hemorrhage. Medical consultations and discussions with family led to a decision to withdraw life support measures. Sadly, Mr. Morrison died on November 25, 2009.

Mr. Morrison's immediate cause of death, as reflected in the official death certificate, was "acute coronary syndrome," and the condition leading to this cause was "coronary artery disease." *See* Def.'s Mot. Summ. J., Ex. 6 [Doc. No. 108-6]; Pl.'s Resp. Br., Ex. 5 [Doc. No. 116-5]. Dr. Shakir had been treating Mr. Morrison for this condition prior to his death; his medical history included "several near syncopal events," "known issues with arrhythmia," and "significant peripheral vascular disease." *See* Def.'s Mot. Summ. J., Ex. 5 [Doc. No. 108-5], p.2 (ECF numbering); Pl.'s Resp. Br., Ex. 11 [Doc. No. 116-11], p.11 (ECF numbering). Mr. Morrison's last office visit to Dr. Shakir was November 20, 2009, the day before the fall. According to Dr. Shakir, Mr. Morrison was "stable and doing well" that day. *See* Def.'s Mot. Summ. J., Ex. 8 [Doc. No. 108-8]; Pl.'s Resp. Br., Ex. 7 [Doc. No. 116-7].

Plaintiff submitted an insurance claim to Defendant in January, 2010, and provided an affidavit to certify that Mr. Morrison suffered an accidental death caused by the fall on November 21, 2009, in which he sustained a head injury. Dr. Shakir provided an attending

physician's statement in support of the claim stating that the primary cause of Mr. Morrison's death was cardiac arrest and the secondary cause was a closed head injury. Dr. Shakir's answers to questions posed on the form indicated that Mr. Morrison fell, hit his head, and stopped breathing; that his injuries were a lacerated scalp and cardiac arrest; that when Dr. Shakir first saw Mr. Morrison in the hospital, he had a normal heart rhythm but had signs of low oxygen to the brain; and that Dr. Shakir observed symptoms of disease, "brain damage from oxygen deprivation." *See* Def.'s Mot. Summ. J., Ex. 8 [Doc. No. 108-8]; Pl.'s Resp. Br., Ex. 7 [Doc. No. 116-7]. In response to the question of whether Mr. Morrison's bodily injury was "directly and independently of all other causes sufficient to produce death," Dr. Shakir checked, "No." *Id*. Asked to explain, Dr. Shakir stated that Mr. Morrison had heart problems but was stable; he also stated: "Obviously without the fall [Mr. Morrison] would not have suffered cardiac arrest and brain damage." *Id*.

Dr. Shakir signed a letter addressed "To Whom It May Concern" dated December 7, 2009. The letter states that Mr. Morrison's fall and closed head injury "among other complicating factors, exacerbated an irregular heart rhythm and led to cardiac arrest." *See* Pl.'s Resp. Br., Ex. 8 [Doc. No. 116-8]. It also says that Dr. Shakir believed "Mr. Morrison's death was triggered and caused by the injury he sustained when falling on November 21st." *Id*.[5]

---

[5] Plaintiff has submitted with her response brief two additional papers bearing Dr. Shakir's name. One is a second "Attending Physician's Statement" dated March 2, 2011, which contains different answers to the questions in Defendant's form. *See* Pl.'s Resp. Br., Ex. 9 [Doc. No. 116-9]. The second paper consists of a copy of what appears to be a page from Dr. Shakir's prescription pad containing handwritten notes with
(continued...)

7

In investigating the claim, Defendant obtained copies of Mr. Morrison's medical records and submitted them to a medical consultant, Dr. Paul Connor, M.D., for review.[6] Based on Dr. Connor's review and information received during the investigation, Defendant denied Plaintiff's claim by letter dated June 29, 2010. The basis of the denial was the policy's definition of "injury" and a conclusion that "there is no evidence that Mr. Morrison's death resulted from an accidental bodily injury independent of all other causes." *See* Def.'s Mot. Summ. J., Ex. 9 [Doc. No. 108-9], p. 12 (ECF numbering); Pl.'s Resp. Br., Ex. 18 [Doc. No. 116-18], p.2. Plaintiff filed suit on June 29, 2011.

## Discussion

### A. Breach of Contract

Oklahoma law, which governs Plaintiff's claim, follows well-settled rules concerning insurance policies. "An insurance policy is a contract. If the terms are unambiguous, clear

---

[5](...continued)
an illegible date in March, 2011. *See* Pl.'s Resp. Br., Ex. 10 [Doc. No. 116-10]. These papers post-date Defendant's denial of Plaintiff's claim in June, 2010, and their origin and significance are unexplained.

Defendant objects to their consideration for summary judgment purposes because they would be inadmissible at trial. "At the summary judgment stage, the parties need not submit evidence in a form admissible at trial; however, the content or the substance of the evidence must be admissible." *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1122 (10th Cir. 2005). Plaintiff states that Dr. Shakir is now deceased and these papers should be considered in lieu of his testimony. However, Plaintiff provides no facts, supported in the manner required by Rule 56, that would establish the admissibility of the challenged documents as statements for medical treatment or as business records of Dr. Shakir, as argued in her briefs. Therefore, Plaintiff's Exhibits 9 and 10 are disregarded.

[6] Defendant attempts to rely on statements in Dr. Connor's "report" of his records review. However, the document consists of six hand-written pages of notes that are largely illegible. *See* Def.'s Mot. Summ. J., Ex. 10 [Doc. No. 108-10]. Also, Defendant purports to quote a conclusion reached by Dr. Connor without providing a citation to the page of the document on which the quotation appears. The Court declines to search the document and try to decipher it. Accordingly, the Court finds that Defendant has not sufficiently supported this stated fact.

and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intentions of the parties." *Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1104 (Okla. 1993); *see BP America, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005); *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). If the language of a contract is unambiguous, "the court is to interpret it as a matter of law," and "[w]hether a contract is ambiguous . . . is a question of law for the courts." *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003) (footnotes omitted). Oklahoma has adopted the reasonable expectations doctrine, which permits consideration of an insured's reasonable expectation of coverage, to be applied only in limited circumstances: "the policy language must be ambiguous and there must be something more than a subjective, uncommunicated and otherwise unsupported expectation of coverage, *i.e.* the exclusions must be masked by technical or obscure language or hidden in the policy's provisions." *BP America*, 148 P.3d at 834 n.2 (citing *American Econ. Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054 (Okla. 2004) and *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 870 (Okla. 1996)).

The determination of whether a contract is ambiguous is made only after applying the pertinent rules of construction. *See Dodson*, 812 P.2d at 376-77; *State ex rel. Comm'rs of Land Office v. Butler*, 753 P.2d 1334, 1336-37 (Okla. 1987). Oklahoma's statutory rules of construction establish that: the language of a contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity (Okla. Stat. tit. 15, §§ 154, 155); a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others (*id*. § 157); a contract must receive

9

such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect (*id*. § 159); words of a contract are to be given their ordinary and popular meaning (*id*. § 160); and a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates (*id*. § 163). "The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous. A contract is ambiguous if it is reasonably susceptible to at least two different constructions." *Pitco*, 63 P.3d at 545-56; *see BP Am*., 148 P.3d at 836. "The test for ambiguity is whether the language 'is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer.'" *Bogdahn*, 89 P.3d at 1054 (quoting *Cranfill v. Aetna Life Ins. Co*., 49 P.3d 703, 706 (Okla. 2002)); *see Dodson*, 812 P.2d at 376-77.

Applying these rules, the Oklahoma Supreme Court has held that an "accident," within the meaning of an insurance policy that does not define the term, "is a distinctive event that takes place by some unexpected happening, the date of which can be fixed with certainty." *See U.S. Fid. & Guar. Co. v. Briscoe*, 239 P.2d 754, 757 (Okla. 1951). In *Willard v. Kelley*, 803 P.2d 1124 (Okla. 1990), the court also held that, absent a different definition in the insurance policy, an accident is an event that is "unprovoked, unforeseen, and unintended on the part of the insured" when viewed objectively from a reasonable person's perspective. *Id*. at 1129 (emphasis omitted). The parties in this case do not disagree that Mr. Morrison's fall – whether due to a trip, slip, or other event – was an "accident" within the common meaning of the term.

The question presented is whether Mr. Morrison's death following this accident was covered by Defendant's insurance policy. The coverage issue turns on the policy's promise of a benefit if an insured suffers an injury in an accident and the policy's definition of injury, as set forth in the Statement of Undisputed Facts, meaning "bodily injury caused by an accident" resulting "directly and independently of all other causes" in a loss of life. *See supra*, pp. 4-5. As the party seeking to recover accidental death benefits under the coverage provisions of an insurance policy, Plaintiff bears the burden to prove that the conditions of coverage are satisfied. *See McCarty v. Occidental Life Ins. Co.*, 268 P.2d 221, 221-22 (Okla. 1954) (syllabus by the court); *see also Hume v. Standard Life & Accident Ins. Co.*, 365 P.2d 387, 390 (Okla. 1961).

To establish coverage, Plaintiff argues that "the 'direct and independent' language in the subject policy is ambiguous" and that the reasonable expectations doctrine should apply because the language "serves as an 'exclusion hidden in policy provisions.'" *See* Pl.'s Resp. Br. [Doc. No. 116], pp.16-17 (quoting *Max True Plastering*, 912 P.2d at 868). Plaintiff asserts that by including in the definition of injury a condition that the loss must result from bodily injury caused by accident "directly and independently of all other causes," Defendant has attempted to hide from insureds an exclusion for medical disease. *Id*. p.17. Plaintiff also argues that this limitation on coverage is inconsistent with Oklahoma law.

These legal arguments must be rejected here. There is no ambiguity in the policy language, which was prominently displayed in the insurance certificate that the Morrisons received. The language is similar to other policies that the Oklahoma Supreme Court has

found to be unambiguous and to require proof by the insured "that accidental injuries caused death, directly and independently of other causes." *See McCarty v. Occidental Life Ins Co.*, 268 P.2d 221, 221 (Okla. 1954) (syllabus by the court); *see also id*. at 226 . Plaintiff's argument that she can recover if Mr. Morrison's death was caused by an accident – regardless whether a pre-existing condition or disease also contributed to his death – because the policy did not contain any exclusion for death caused by disease or infirmity, is contrary to binding case law. In *Hume v. Standard Life & Acc. Ins. Co*., 365 P.2d 387 (Okla. 1961), the Oklahoma Supreme Court endorsed the following rule:

> If the policy limits the liability to disability or death resulting solely from accidental injury "independently of all other causes", there can be no recovery for the death of insured resulting from the concurring effect of an injury and pre-existing disease. . . .
>
> The rule to be applied is that even though the contract of insurance does not contain the exclusion clause as to disability or disease it is still the duty of the plaintiff to prove that the insured has suffered the injury directly and independently of all other causes solely through external, violent and accidental means.

*Id*. at 390 (internal quotation and citations omitted).

Accordingly, relying on Oklahoma case law, the Tenth Circuit has distilled a general rule that is applicable here: if "death resulted because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, with both the disease and the accident acting in concurring causes of death," there is no coverage under a policy that provides benefits for a death that occurs as a direct result of an injury caused by an accident, independent of all other causes. *See Flores v. Monumental Life Ins. Co*. 620 F.3d 1248, 1252

(10th Cir. 2010) (internal quotation omitted). Plaintiff attempts to distinguish *Flores* based on differences in language between the two insurance policies, but this argument is unpersuasive. In fact, the court in *Flores* followed a prior decision in which the language of an accidental death policy is identical to the policy in this case. *See Bewley v. American Home Assur. Co.*, 450 F.2d 1079, 1080 (10th Cir. 1971); *see also Vowell v. Great Am. Ins. Co.*, 428 P.2d 251, 253 (Okla. 1966) (under language substantially similar to the policy in this case, defendant was entitled to judgment based on lack of proof that plaintiff's loss directly resulted from accidental bodily injury, independently of all other causes).

On the record presented in this case, the Court finds that Plaintiff has not come forward with evidence from which to reasonably infer that Mr. Morrison lost his life as a result of having suffered a bodily injury caused by an accident directly and independently of all other causes. Plaintiff relies for her proof on the opinions of Dr. Shakir, as stated in documents submitted during the claim handling process. Although Defendant disputes whether Plaintiff would be able to admit these statements of opinion into evidence at trial to prove causation, the Court need not reach this evidentiary issue. The Court finds that Dr. Shakir's statements are insufficient to carry Plaintiff's burden of proof. On their face, the statements show that Mr. Morrison's cardiac condition contributed to his death.

Dr. Shakir stated that Mr. Morrison's death was caused by cardiac arrest and a closed head injury. He later explained that Mr. Morrison's fall and head injury "among other complicating factors, exacerbated an irregular heart rhythm and led to cardiac arrest." *See* Pl.'s Resp. Br., Ex. 8 [Doc. No. 116-8]. Although Dr. Shakir may have believed that

"Mr. Morrison's death was triggered and caused by the injury he sustained when falling on November 21st" (*id.*), Dr. Shakir did not ever say Mr. Morrison's death resulted directly from a closed head injury and cardiac arrest, independently of other causes. Instead, Dr. Shakir said that Mr. Morrison's heart condition was a contributing factor. Thus, even if Plaintiff's evidence is considered, she lacks proof that Mr. Morrison's bodily injury caused by an accident resulted in his death directly and independently of all other causes.

For these reasons, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact related to the issue of whether Mr. Morrison's death was covered by the accidental death insurance policy. Therefore, Plaintiff cannot prevail on a breach of contract claim based on Defendant's denial of benefits under the policy, and Defendant is entitled to a judgment on this claim as a matter of law.

**B.     Bad Faith**

Because Plaintiff has failed to establish a breach of contract, she also cannot prevail on her bad faith claim as a matter of law. *See Davis v. GHS Health Maint. Org., Inc.*, 22 P.3d 1204, 1210 (Okla. 2001) ("a determination of liability under the contract is a prerequisite to a recovery for bad faith breach of an insurance contract"); *see also Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009) (essential element of a bad faith claim is that "claimant was entitled to coverage under the insurance policy").

**C.     Unjust Enrichment**

Plaintiff's claim of unjust enrichment is based on an allegation, for which she provides factual support in her summary judgement brief, that Defendant gained a substantial financial

benefit from the Morrisons' payment of premiums for more than 20 years. Plaintiff alleges that Defendant obtained this financial benefit at Plaintiff's expense by retaining insurance benefits promised "pursuant to the terms of the parties' contract." *See* Am. Compl. [Doc. No. 29], ¶¶ 34-35. Plaintiff also argues in opposition to Defendant's Motion regarding this claim that Defendant misled the Morrisons "by failing to disclose the narrow manner in which it interprets 'accidental death' for purposes of paying benefits under the policy." *See* Pl.'s Resp. Br. [Doc. No. 116], pp.28-29. It is unclear from Plaintiff's pleading, and from arguments in her summary judgment brief, whether the remedy sought on this claim is payment of the insurance benefits allegedly owed under the policy or disgorgement of the insurance premiums paid for policy coverage. *See* Am. Compl. [Doc. No. 29], ¶ 38; Pl.'s Resp. Br. [Doc. No. 116], p.29.

Defendant asserts that it is entitled to summary judgment on this claim, in part, because an equitable remedy is not available where the plaintiff has an adequate remedy at law. Defendant contends Plaintiff's contractual and tort theories of recovery are claims for which she may recover damages at law, if warranted by the evidence, and thus her equitable claim should be dismissed. Plaintiff agrees with the legal principle cited by Defendant, but argues that she is entitled to pursue alternative or inconsistent claims.

Plaintiff is correct that a party may plead and pursue alternative theories of recovery, but she is incorrect to say that she may recover for unjust enrichment under the circumstances of this case. "Where an enforceable express contract governs the parties' relationship, quasi-contractual remedies such as unjust enrichment are not available." *Chieftain Royalty*

*Co. v. Dominion Okla. Tex. Explor. & Prod., Inc.*, 2011 WL 9527717, *5 (W.D. Okla. July 14, 2011); *accord MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*, No. CIV-06-1345-M, 2008 WL 2066287, *7 (W.D. Okla. May 14, 2008); *see also Member Serv. Life Ins. Co. v. Am. Nat'l Bank & Trust Co.*, 130 F.3d 950, 957 (10th Cir. 1997) (describing this principle as a "hornbook rule"). Further, Plaintiff's unjust enrichment theory appears to be an alternative version of her breach of contract and bad faith claims, that Defendant failed to honor a reasonable expectation of its insureds regarding accidental death coverage. It is not inequitable, however, to enforce the unambiguous terms of the accidental death insurance policy that the Morrisons purchased. They received the benefit of the premiums they paid throughout the years that the policy was in force because they would have received the promised accidental death benefits if an insured had died as a result of bodily injury caused by accident, directly and independently of all other causes, during the policy term.

For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's unjust enrichment claim.

**D.     Statutory Violation**

Plaintiff claims Defendant violated provisions of the Oklahoma Insurance Code that prohibit insurers from engaging in unfair and deceptive trade practices. *See* Okla. Stat. tit. 36, §§ 1203-04. Specifically, Plaintiff alleges Defendant "purposely and unlawfully made misrepresentations and false advertising of policy contracts." *See* Am. Compl. [Doc. No. 29], ¶ 41. The Amended Complaint identifies the following misrepresentations or unfair and deceptive practices: Defendant sold individual coverage under a group policy and

"misrepresented the terms of the policy and the benefits and advantages promised therein by failing to provide policyholders . . . with a copy of the group policy," *id*. ¶ 44; "Defendant misrepresented the terms of the policy and the benefits and advantages promised therein by failing to define 'accident', 'accidental' or 'accidental death' in the policy," *id*. ¶¶ 45, 47; Defendant included in the policy an "unclear and nonsensical definition of 'injury'" that "is misleading and insufficient to advise policyholders . . . of the terms upon which benefits and advantages under the policy will be provided," *id*. ¶¶ 46, 47; and "Defendant misrepresented the terms of the policy by failing to inform policyholders . . . of the choice of law clause in the group policy," *id*. ¶¶ 48, 51.

In opposing summary judgment on this claim, Plaintiff relies on the facts that the group policy and the certificate of insurance issued to them do not define "accident" or "accidental death" and that the restriction on coverage inserted into the definition of "injury" does not fit the common meaning of "accidental death" or a description of coverage on Defendant's internet website.[7] Plaintiff does not pursue her allegation that a failure to inform insureds of a choice-of-law provision in the group policy was an unfair or deceptive insurance practice.[8]

Defendant contends that Plaintiff has no private right of action under the insurance statutes, citing *Walker v. Chouteau Lime Co*., 849 P.2d 1085 (1993). The holding of *Walker*

---

[7] No showing is made that this website, or perhaps a similar one pertaining to J.C. Penney Life Insurance Company, existed when the Morrisons purchased coverage in 1990 or that they were aware of it.

[8] In any event, the Oklahoma Insurance Code appears to prohibit this provision, *see* Okla. Stat. tit. 36, § 3617, and Defendant elected not to enforce it in this case. *See* Order of June 4, 2012 [Doc. No. 28].

concerned different statutory provisions known as the Unfair Claim Settlement Practices Act, Okla. Stat. tit. 36, §§ 1221-28 (now renumbered, §§ 1250.1-1250.17). *See Walker*, 878 P.2d at 1086-87; *see also McWhirter v. Fire Ins. Exchange, Inc.*, 878 P.2d 1056, 1057-58 (Okla. 1994). Thus, *Walker* does not control Plaintiff's claim under a part of the Insurance Code known as the Unfair Practices and Frauds Act, Okla. Stat. tit. 36, §§ 1201-1219. However, federal courts have reached the conclusion, under the rationale of *Walker*, that there is similarly no private right of action under the Unfair Practices and Frauds Act. *See Thompson v. Metropolitan Life Ins. Co.*, 540 F. Supp. 2d 1212, 1229-31 (W.D. Okla. 2008); *Risk v. Allstate Life Ins. Co.*, No. 04-CV-0333-CVE, 2006 WL 2021597, *3 (N.D. Okla. July 17, 2006) (unpublished). The Court finds the analysis of these cases to be persuasive, and holds that Plaintiff cannot bring an action for damages based on Defendant's alleged violation of the Oklahoma Insurance Code.

Therefore, Defendant is entitled to summary judgment on Plaintiff's statutory claim.

## Conclusion

For these reasons, Defendant is entitled to summary judgment on all claims asserted by Plaintiff in the Amended Complaint.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 44] is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 9th day of January, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE